FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 27, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KELLY DAWN L,<br><br>                    Plaintiff,<br><br>   v.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br>                    Defendant. | NO:  1:19-CV-3091-FVS<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment.

ECF Nos. 12, 13.  This matter was submitted for consideration without oral

argument.  Plaintiff is represented by attorney D. James Tree.  Defendant is

---

[1] Andrew M. Saul is now the Commissioner of the Social Security

Administration.  Accordingly, the Court substitutes Andrew M. Saul as the

Defendant and directs the Clerk to update the docket sheet.  *See* Fed. R. Civ. P.

25(d).2

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

represented by Special Assistant United States Attorney Jeffrey E. Staples.  The

Court, having reviewed the administrative record and the parties' briefing, is fully

informed.  For the reasons discussed below, Plaintiff's Motion, ECF No. 12, is

denied and Defendant's Motion, ECF No. 3, is granted.

## JURISDICTION

Plaintiff Kelly Dawn L.[2] (Plaintiff), filed for disability insurance benefits

(DIB) and supplemental security income (SSI) on February 4, 2016, alleging an

onset date of November 15, 2014, in both applications.  Tr. 276-90.  Benefits were

denied initially, Tr. 167-75, and upon reconsideration, Tr. 178-89.  Plaintiff

appeared at a hearing before an administrative law judge (ALJ) on March 5, 2018.

Tr. 74-106.  On May 23, 2018, the ALJ issued an unfavorable decision, Tr. 16-34,

and on March 1, 2019, the Appeals Council denied review.  Tr. 1-7.  The matter is

now before this Court pursuant to 42 U.S.C. § 405(g); 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearings and

transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and

are therefore only summarized here.

---

[2] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first

name and last initial, and, subsequently, Plaintiff's first name only, throughout this

decision.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

Plaintiff was 56 years old at the time of the hearing.  Tr. 96.  She has a GED.

Tr. 96.   She has work experience as an intake worker at a women's shelter and as a

caregiver and cashier.  Tr. 96-100.

Plaintiff testified she cannot work because she has panic attacks and anxiety.

Tr. 88-89.  She does not like to leave her house.  Tr. 85, 88.  She feels socially

awkward due to her anxiety and panic attacks.  Tr. 88-89.  When she has anxiety,

she gets really nervous and it is hard for her to talk.  Tr. 90.  She has anxiety attacks

a couple of times per week for a couple of hours at a time.  Tr. 90.  She also has back

pain and migraines.  Tr. 88, 92.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported by

substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158

(9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable

mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and

citation omitted).  Stated differently, substantial evidence equates to "more than a

mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).

In determining whether the standard has been satisfied, a reviewing court must

consider the entire record as a whole rather than searching for supporting evidence in

isolation.  *Id.*

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3

1       In reviewing a denial of benefits, a district court may not substitute its

2  judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156

3  (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

4  rational interpretation, [the court] must uphold the ALJ's findings if they are

5  supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674

6  F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's

7  decision on account of an error that is harmless."  *Id*.  An error is harmless "where it

8  is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. at 1115

9  (quotation and citation omitted).  The party appealing the ALJ's decision generally

10  bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S.

11  396, 409-10 (2009).

12               **FIVE-STEP EVALUATION PROCESS**

13       A claimant must satisfy two conditions to be considered "disabled" within the

14  meaning of the Social Security Act.  First, the claimant must be "unable to engage in

15  any substantial gainful activity by reason of any medically determinable physical or

16  mental impairment which can be expected to result in death or which has lasted or

17  can be expected to last for a continuous period of not less than twelve months."  42

18  U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's impairment must

19  be "of such severity that he is not only unable to do his previous work[,] but cannot,

20  considering his age, education, and work experience, engage in any other kind of

21

1 substantial gainful work which exists in the national economy."  42 U.S.C. §§

2 423(d)(2)(A), 1382c(a)(3)(B).

3       The Commissioner has established a five-step sequential analysis to determine

4 whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-

5 (v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's

6 work activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is

7 engaged in "substantial gainful activity," the Commissioner must find that the

8 claimant is not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

9       If the claimant is not engaged in substantial gainful activity, the analysis

10 proceeds to step two.  At this step, the Commissioner considers the severity of the

11 claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the

12 claimant suffers from "any impairment or combination of impairments which

13 significantly limits [his or her] physical or mental ability to do basic work

14 activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c),

15 416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

16 however, the Commissioner must find that the claimant is not disabled.  20 C.F.R.

17 §§ 404.1520(c), 416.920(c).

18       At step three, the Commissioner compares the claimant's impairment to

19 severe impairments recognized by the Commissioner to be so severe as to preclude a

20 person from engaging in substantial gainful activity.  20 C.F.R. §§

21 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe

than one of the enumerated impairments, the Commissioner must find the claimant

disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the

severity of the enumerated impairments, the Commissioner must pause to assess the

claimant's "residual functional capacity."  Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the

analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in the

past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the

claimant is capable of performing past relevant work, the Commissioner must find

that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the

claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the

claimant's RFC, the claimant is capable of performing other work in the national

economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this

determination, the Commissioner must also consider vocational factors such as the

claimant's age, education, and past work experience.  20 C.F.R. §§

404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other

work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity since November 15, 2014, the alleged onset date.  Tr. 18.  At step two, the ALJ found that Plaintiff has the following severe impairments:  lumbar and cervical degenerative disc disease; affective disorder (depression versus bipolar); anxiety related disorders (anxiety, generalized anxiety disorder, and panic); personality disorder; and posttraumatic stress disorder.  Tr. 18-19.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 20.

The ALJ then found that Plaintiff has the residual functional capacity to perform medium work with the following additional limitations:

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7

The claimant can frequently balance, stoop, kneel, and crouch, but no climb or crawl; should avoid concentrated exposure to vibration and hazards; could perform simple, routine tasks and follow short, simple instructions; could do work that needs little or no judgment; could perform simple duties that can be learned on the job in a short period; requires a work environment that is predictable and with few work setting changes; can work in proximity to coworkers but not in a cooperative or team effort; requires a work environment that has no more than superficial interactions with coworkers; and requires a work environment without public contact.

Tr. 21.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 26. At step five, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there are other jobs existing in significant numbers in the national economy that Plaintiff can perform such as laundry worker, linen room attendant, or hand packager. Tr. 27. Thus, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from November 15, 2014, through the date of the decision. Tr. 28.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II and supplemental security income under Title XVI of the Social Security Act. ECF No. 12. Plaintiff raises the following issues for review:

1.      Whether the ALJ properly evaluated Plaintiff's symptom testimony; and

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

2.      Whether the ALJ properly considered the medical opinion evidence.
ECF No. 12 at 2.

## DISCUSSION

### A.      Symptom Testimony

Plaintiff contends the ALJ improperly rejected her symptom testimony.
ECF No. 12 at 4-16.  An ALJ engages in a two-step analysis to determine whether
a claimant's testimony regarding subjective pain or symptoms is credible.  "First,
the ALJ must determine whether there is objective medical evidence of an
underlying impairment which could reasonably be expected to produce the pain or
other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks
omitted).  "The claimant is not required to show that her impairment could
reasonably be expected to cause the severity of the symptom she has alleged; she
need only show that it could reasonably have caused some degree of the
symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal
quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of
malingering, the ALJ can only reject the claimant's testimony about the severity of
the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the
rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal
citations and quotations omitted).  "General findings are insufficient; rather, the
ALJ must identify what testimony is not credible and what evidence undermines

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9

the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

First, the ALJ found the record does not support Plaintiff's allegations regarding the severity of her symptoms and the degree of functional limitation alleged. Tr. 22. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in

determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261
F.3d at 857.  Minimal objective evidence is a factor which may be relied upon in
discrediting a claimant's testimony, although it may not be the only factor. *See
Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

With regard to Plaintiff's back impairment, the ALJ found Plaintiff's
allegations regarding pain and functional limitations are not supported by the
record.  Tr. 22-23.  The ALJ noted that around Plaintiff's alleged onset date in
November 2014, Plaintiff was seen for routine medical care for mainly minor
issues and it was noted that balance and gait were intact and there was no motor
weakness.  Tr. 22, 390-91, 432-36.  In November 2015, Plaintiff was seen for back
pain rated at 9/10, but she had normal gait and posture, no neck abnormality, and
normal upper and lower extremities.  Tr. 406-08.  She went to the emergency room
in November and December 2015 complaining of sciatic nerve pain but the only
finding was right paraspinal muscle tenderness with normal range of motion in the
back and normal neurological exams.  Tr. 409-15.  March 2016 x-rays of the
cervical spine showed mild degenerative changes with a congenital fusion at C2-3
and a lumbar spine x-ray revealed only mild narrowing of L4-5 and L5-S1 discs.
Tr. 440-41.  A physical exam on the same date was completely normal.  Tr. 23,
465.  Other physical exams throughout the record were essentially normal.  Tr. 23,
460, 488, 492, 497, 500-01, 505, 508-09, 512, 516, 657, 661, 725-26, 729-30.  In
March 2017, Plaintiff denied any physical symptoms contributing to her emotional

discomfort.  Tr. 24, 556.  The ALJ's conclusions regarding the evidence of physical limitations are supported by substantial evidence.

With regard to Plaintiff's mental impairments, the ALJ also found the allegations of symptom severity and degree of functional limitation are not supported by the record.  Tr. 22-23.  The ALJ noted that around her alleged onset date, Plaintiff was taking medication for anxiety and depression.  Tr. 22, 391, 432. The ALJ observed that her medications were effective because on exam, Plaintiff was in no acute distress, had normal mood and affect, was active and alert, and had normal recent and remote memory.  Tr. 22, 390.  In January 2016, Plaintiff presented as depressed with poor insight, but was active and alert, oriented in all spheres, and had normal memory.  Tr. 23, 429.  Between March 2016 and November 2017, Plaintiff's mental or psychiatric status was frequently normal on exam.  Tr. 23, 459, 465, 488, 492, 497, 500, 505, 508, 512, 516, 657, 661, 725, 729.  Plaintiff started counseling in April 2016 and reported good days and bad days in May 2016 but was sleeping better overall.  Tr. 23, 453, 577.  She started Wellbutrin and a mental status examination in March 2017 was normal except for a sad mood and affect.  Tr. 23, 557, 561.  In April 2017, her primary care provider indicated that Plaintiff's anxiety was improved with medication.  Tr. 24, 496.  In July 2017, her mental status was normal on exam and she stopped counseling to focus on hepatitis C treatment.  Tr. 24, 488, 634-35.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

1      Plaintiff contends the ALJ ignored findings from examining psychologists

2  and therapy notes which support Plaintiff's allegations.  ECF No. 12 at 5-7 (citing

3  Tr. 393, 403, 437, 453, 544, 554, 568, 573-74, 577-78.  However, the ALJ

4  considered many of the records cited by Plaintiff in evaluating the severity of her

5  mental impairments.  Tr. 20-21.  The ALJ noted that examining psychologist Mark

6  Duris, Ph.D., recorded normal mental status exam findings and found moderate

7  depression and anxiety but assessed no more than moderate limitations.  Tr. 20-21,

8  393-94.  The ALJ cited the observations of Lorri Burns during a DSHS facilitated

9  appointment that Plaintiff appeared depressed, did not smile, and apologized for

10  things that were not her fault, but was polite, well groomed, and cooperative.  Tr.

11  20-21, 437.  Additionally, the ALJ noted some mental status exam findings

12  throughout the record showed variable insight and judgment but the most recent

13  were fair to good.  Tr. 21, 539, 545, 550, 557, 657, 661, 665, 725, 729, 734.

14      The ALJ also acknowledged that Plaintiff expressed some problems leaving

15  her home but found the limitations from this issue and depression caused no more

16  than moderate limitations at step three.  Tr. 21.  In short, the ALJ did not ignore

17  negative findings and conclude Plaintiff had no limitations; indeed, the ALJ

18  included limitations in the RFC to account for those mental limitations reasonably

19  found to be supported by the record.  Tr. 21.  Furthermore, to the extent the record

20  could have been interpreted differently, the ALJ, not this court, is responsible for

21  reviewing the evidence and resolving conflicts or ambiguities.  *Magallanes v.*

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

1    *Bowen*, 881 F.2d 747, 751 (9th Cir.1989); *see also Richardson v. Perales*, 402 U.S.

2    389, 400 (1971).

3        Second, the ALJ found treatment was effective.  Tr. 22-23.  The

4    effectiveness of treatment is a relevant factor in determining the severity of a

5    claimant's symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Warre v.*

6    *Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining

7    that conditions effectively controlled with medication are not disabling for

8    purposes of determining eligibility for benefits); *Tommasetti v. Astrue*, 533 F.3d

9    1035, 1040 (9th Cir. 2008) (recognizing that a favorable response to treatment can

10    undermine a claimant's complaints of debilitating pain or other severe limitations).

11    The ALJ noted that in March and April 2017, Plaintiff reported a decrease in

12    depressive symptoms and was feeling better.  Tr. 23, 554, 556.  Her primary care

13    provider indicated her anxiety was improved on medication in April 2017.  Tr. 23-

14    24, 496.  In October 2017, Plaintiff reported no side effects, the current dose of

15    medication was doing well to control her anxiety and insomnia symptoms, and she

16    had no complaints.  Tr. 23, 661.

17        Plaintiff suggests the ALJ selected a few isolated instances of improvement

18    and that her improvement did not mean she was capable of work.[3]  ECF No. 12 at

19

20    _____

21    [3] Plaintiff contends the evidence "supports the fact that [Plaintiff] meets the 'C'

criteria of the mental listings."  ECF No. 12 at 8; *see* ECF No. 12 at 10.  Plaintiff

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

9-10.  However, "[s]ymptoms may wax and wane during the progression of a mental disorder.  Those symptoms, however, may also subside during treatment. . . .  Such evidence of medical treatment successfully relieving symptoms can undermine a claim of disability."  *Wellington v. Berryhill,* 878 F.3d 867, 876 (9th Cir. 2017) (citing *Garrison*, 759 F.3d at 1017).  The ALJ's interpretation of the record was reasonable, and this is a clear and convincing reason for giving less weight to Plaintiff's symptom claims.

Third, the ALJ found inconsistencies between Plaintiff's testimony and evidence in the record which undermine her symptom claims.  Tr. 24.  In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability-review process with any other existing statements or conduct under other circumstances.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ observed that Plaintiff testified she had not tried to work at all since 2014, but her earnings record showed she worked as a caregiver for two months in 2016.  Tr. 24, 87, 299.  The ALJ noted Plaintiff testified that she could not do the job because of anxiety

_____

bears the burden of establishing a listing is met.  *Burch*, 400 F.3d at 683.  A generalized assertion is not enough to establish disability at step three.  *Tackett*, 180 F.3d at 1100.  To the extent Plaintiff intended to challenge the ALJ's step three finding, the argument is insufficient.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

1  and because she does not like to leave the house but did not mention any physical

2  health issues, despite alleging disabling back limitations.  Tr. 24, 88.  Plaintiff

3  argues this supports rather than undermines her testimony, ECF No. 12 at 12;

4  however, the ALJ reasonably interpreted these inconsistent statements as

5  undermining the persuasiveness of her allegations.

6  Next, the ALJ observed that despite allegations of panic attacks, there is

7  virtually no evidence of such attacks in the record and that Plaintiff reported

8  improvement of her anxiety, insomnia, and depression with treatment.  Tr. 24, 554,

9  556.  Plaintiff cites four instances where she reported panic attacks (Tr. 433),

10  "panic like symptoms" (Tr. 393), "panic attacks and anxiety" (Tr. 447), and "bad

11  anxiety attacks" (Tr. 723).  Even if the ALJ's characterization of the panic attack

12  evidence is not supported by substantial evidence, this is a small point in the ALJ's

13  overall consideration of inconsistencies in the record.  As such, any error would be

14  harmless.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63

15  (9th Cir. 2008).

16  The ALJ next noted that although Plaintiff testified that she does not like to

17  leave the house, she leaves the house for appointments, grocery shopping, and to

18  transport her grandchildren between their father and mother twice a week.  Tr. 24,

19  86, 88, 398.  She also testified that she does not leave her home because she has

20  nothing to do, Tr. 85, and did not mention difficulty leaving her home to Thomas

21  Genthe, Ph.D., an examining psychologist.  Tr. 24, 397-401.  Plaintiff argues that

her outings away from home are qualified by anxiety and that she told other providers about her difficulty leaving home. ECF No. 12 at 12-13. However, the Court must uphold the ALJ's decision when it is not based on legal error and is supported by substantial evidence. *Tackett*, 180 F.3d at 1097. These factors were reasonably considered by the ALJ as inconsistencies in Plaintiff's reporting.

The ALJ also noted that despite Plaintiff's testimony that she used methamphetamines in 1996, the record contains multiple positive urinalyses for methamphetamines and amphetamines in 2017. Tr. 24, 88, 523, 526-27, 672, 685, 690, 703. Plaintiff suggests the test results may be false positives and observes that no provider indicated concern about possible drug use. ECF No. 12 at 14. The test results specifically state that they are screenings only and should not be used for non-medical purposes such employment or legal testing. Tr. 523, 526-27, 672, 685, 690, 703. Although the ALJ acknowledged the reason for the positive test results is "not entirely clear," the ALJ concluded the positive test results "warrant mentioning because the mental status examinations throughout the record were mostly within normal limits." Tr. 24. The Court fails to see the relationship between the ambiguous drug screens and the mental status exams. To the extent the ALJ considered this evidence in discounting Plaintiff's allegations, the ALJ erred. However, the ALJ gave other clear and convincing reasons supported by substantial evidence for giving less weight to Plaintiff's symptom allegations and the error is therefore harmless. *See Carmickle*, 533 F.3d at 1162-63.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17

Fourth, the ALJ found Plaintiff's activities of daily living are inconsistent with the disabling levels of pain and mental health symptoms alleged.  Tr. 24.  It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in assessing a claimant's symptom complaints.  *See Rollins*, 261 F.3d at 857.  However, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits.  *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987).  Notwithstanding, if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain.  *Fair,* 885 F.2d at 603.  Furthermore, "[e]ven where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1113.

The ALJ found Plaintiff's activities "are actually quite involved," noting Plaintiff reported being able to rearrange furniture, watch television, go to church, care for her personal needs, prepare meals, feed herself, wash dishes, do laundry, vacuum, dust, take medication, renew prescriptions, schedule appointments, use a telephone and directories, mail parcels, and shop for groceries and personal needs. Tr. 24-25, 398.  The ALJ concluded that these activities are inconsistent with the disabling levels of pain and mental health symptoms alleged by Plaintiff and

suggest a level of functioning greater than alleged in her application and testimony.

Tr. 25. The ALJ also observed that the wide range of these daily activities

contrasts with the limitations alleged in her function report. Tr. 26, 312-19.

Plaintiff contends that her activities do not translate into full-time work

because she testified she spends very little time outside her home. ECF No. 12 at

12-13; Tr. 88. However, even if a claimant's daily activities do not demonstrate a

claimant can work, they may undermine the claimant's complaints if they suggest

the severity of the claimant's limitations were exaggerated. *See Valentine v.*

*Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009); *see also Molina*,

674 F.3d at 1113. The ALJ's interpretation of the evidence was reasonable and

this is a clear and convincing reason for finding Plaintiff's symptom claims less

than fully reliable.

**B.    Medical Opinion Evidence**

Plaintiff contends the ALJ erred in evaluating the opinions of examining

psychologist Mark Duris, Ph.D., examining psychologist Thomas Genthe, Ph.D.,

and reviewing physician Rox Burkett, M.D. ECF No. 12 at 16-20. There are three

types of physicians: "(1) those who treat the claimant (treating physicians); (2) those

who examine but do not treat the claimant (examining physicians); and (3) those

who neither examine nor treat the claimant but who review the claimant's file

(nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195,

1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's

opinion carries more weight than an examining physician's, and an examining

physician's opinion carries more weight than a reviewing physician's." *Id.* "In

addition, the regulations give more weight to opinions that are explained than to

those that are not, and to the opinions of specialists concerning matters relating to

their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may

reject it only by offering "clear and convincing reasons that are supported by

substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

"However, the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported by

clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

(internal quotation marks and brackets omitted). "If a treating or examining doctor's

opinion is contradicted by another doctor's opinion, an ALJ may only reject it by

providing specific and legitimate reasons that are supported by substantial

evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

1.   *Mark Duris, Ph.D.*

Dr. Duris examined Plaintiff in February 2015 and completed a DSHS

Psychological/Psychiatric Evaluation form.  Tr. 392-96.  He diagnosed major

depressive disorder, social anxiety disorder, and dependent personality disorder.  Tr.

392-96.  He assessed moderate limitations in six functional areas:  the ability to

perform activities within a schedule, maintain regular attendance, and be punctual

within customary tolerances without special supervision; the ability to perform

routine tasks without special supervision; the ability to adapt to changes in a routine

work setting; the ability to ask simple questions or request assistance; the ability to

communicate and perform effectively in a work setting; and the ability to complete a

normal workday and workweek without interruptions from psychologically based

symptoms.  Tr. 394.  The ALJ gave some weight to Dr. Duris' opinion but

concluded that "some of the moderate impairments seem overestimated."  Tr. 25.

First, the ALJ found that the limitations assessed contrasted with Plaintiff's

ability to live alone and perform all activities of daily living independently.  Tr. 25.

An ALJ may discount a medical source opinion to the extent it conflicts with the

claimant's daily activities.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595,

601-02 (9th Cir. 1999).  The ALJ noted that Plaintiff reported living alone and being

able to perform all of her activities of daily living independently, yet Dr. Duris

assessed moderate impairments in the ability to act within a schedule, maintain

regular attendance, be punctual, perform routine tasks without special supervision,

ask simple questions or request assistance, communicate, and perform effectively.

Tr. 25, 392, 394.  Plaintiff contends that her ability to live alone and perform

activities of daily living are consistent with her anxiety disorder and do not support

rejection of limitations on maintaining attendance at work or performing work duties

effectively.  ECF No. 12 at 17.  However, the ALJ reasonably considered Plaintiff's

independence in performing daily activities and living alone in giving less weight to

Dr. Duris' opinion and this is a specific, legitimate reason supported by substantial evidence.

Second, the ALJ found Dr. Duris' mental status exam findings and mental status exam findings throughout the record do not support the limitations assessed. Tr. 25.  A medical opinion may be rejected if it is unsupported by medical findings.  *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas*, 278 F.3d at 957; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992).  The ALJ observed that Dr. Duris noted a euthymic mood but no other unusual or abnormal findings and he indicated every other mental status exam finding was within normal limits.  Tr. 395-96.  The ALJ also observed that many mental status exam findings throughout the record were also essentially normal. Tr. 25; *see* Tr. 21, 23, 459, 465, 488, 492, 497, 500, 505, 508, 512, 516, 539, 545, 550, 557, 657, 661, 725, 729, 665, 725, 729, 734.  Plaintiff contends the ALJ erred by considering the mental status exams because psychiatric exams are subjective. ECF No. 12 at 18.  However, mental status examinations are objective measures of an individual's mental health, *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017), and the ALJ reasonably considered them in evaluating the supportability of Dr. Duris' opinion.  This is a specific, legitimate reason supported by substantial evidence.

### 2. *Thomas Genthe, Ph.D.*

Dr. Genthe examined Plaintiff in December 2015 and completed a DSHS Psychological/Psychiatric Evaluation form. Tr. 397-404. He diagnosed major depressive disorder, generalized anxiety disorder, methamphetamine use in sustained remission, and alcohol use disorder in sustained remission. Tr. 398. Dr. Genthe assessed moderate limitations in eight functional areas and an overall severity rating of moderate. Tr. 399-400.

The ALJ gave Dr. Genthe's opinion some weight. First, the ALJ found Dr. Genthe's assessment is inconsistent with Plaintiff's daily activities. Tr. 25. As noted *supra*, a medical opinion may be discounted to the extent it conflicts with the claimant's daily activities. *Morgan*, 169 F.3d at 601-02. The ALJ found the many moderate limitations assessed by Dr. Genthe are inconsistent with Plaintiff's report that she can perform all of her personal self-care, take care of domestic and household chores, manage her medication, schedule and attend doctor's appointments, use telephones and directories, mail parcels, and shop for groceries and personal needs. Tr. 25, 398. The ALJ noted that Plaintiff indicated she could perform a full range of activities inside and outside the house and that she did not report any problem leaving her home to Dr. Genthe. Tr. 25. Furthermore, the ALJ noted that Plaintiff's chief complaints to Dr. Genthe were primarily physical and her only mental health complaint was grief, which is inconsistent with the limitations assessed. Tr. 24, 397. Plaintiff contends the ALJ should not have considered her

own assessment of her condition.  ECF No. 10 at 19.  Even if that is correct, the

ALJ's point that Plaintiff's function regarding daily activities exceeds the limitations

assessed is valid and a specific, legitimate reason for giving less weight to Dr.

Genthe's opinion.

Second, the ALJ found Dr. Genthe's opinion is inconsistent with his exam

findings.  Tr. 25.  A medical opinion may be rejected by the ALJ if it contains

inconsistencies or is inadequately supported.  *Bray*, 554 F.3d at 1228; *Thomas*, 278

F.3d at 957.  The ALJ noted that other than deficits in insight and judgment, Dr.

Genthe's mental status exam results were within normal limits.  Tr. 25, 401-02.

Additionally, the PAI test administered by Dr. Genthe indicated Plaintiff "reports a

degree of anxiety that is unusual even in clinical samples."  Tr. 25, 403.  The ALJ

also noted that the PAI indicates that drug use may be the source of some problems

in Plaintiff's life although she reported to Dr. Genthe that she had not used

substances or alcohol for at least a few years.  Tr. 25, 398, 404.  This is a specific,

legitimate reason supported by substantial evidence.

### 3. Rox Burkett, M.D.

Dr. Burkett reviewed the record in February 2018 and noted diagnoses of

degenerative lumbar disc disease, anxiety, affective/depressive disorders, and PTSD.

Tr. 715.  Dr. Burkett opined that Plaintiff's most limiting and well-documented

problems are mental.  Tr. 716.  He opined that Plaintiff's limitations meet or at least

equal listing 12.02 or 12.04.  Tr. 716.  He indicated that Plaintiff "might appear OK

1   for short periods of time" but that she could not work an eight-hour day, 40 hours

2   per week, 50 weeks of the year.  Tr. 716.  The ALJ gave slight weight to Dr.

3   Burkett's opinion.  Tr. 25-26.

4          First, the ALJ found that Dr. Burkett took the role of advocate instead

5   objective reviewer.  Tr. 25, 716.  When a physician is involved in the application

6   process and advocates for the patient, the physician's opinion may be rejected

7   because it is not objective.  *Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996); *see*

8   *also Matney*, 981 F.2d at 1020 (affirming ALJ's finding that physician's opinion was

9   entitled to less weight because he agreed to become an advocate and assist in the

10  application process).  The ALJ found the tone of Dr. Burkett's letter indicates he

11  took on the role of advocate, and Plaintiff does not address this reason.  Tr. 25; ECF

12  No. 12 at 20; ECF No. 14 at 9.  Defendant argues that Dr. Burkett's conclusion that

13  "this claimant is very close, if not the worst case of combined mental health issues"

14  he had seen during 30 years of practice is hyperbolic and suggests a position of

15  advocacy since those psychologists who examined Plaintiff assessed no more than

16  moderate limitations and did not suggest that she meets or equals a listing.  Tr. 717;

17  ECF No. 13 at 9.  The ALJ reasonably considered the advocacy tone of Dr. Burkett's

18  opinion in assigning it less weight.[4]

19

20  ─────────────────

21  [4] The ALJ also noted that Dr. Burkett critiqued an examining mental health

    evaluator (unspecified, but presumably Dr. Genthe or Dr. Duris) who "noted some

1    Second, the ALJ noted that Dr. Burkett is a physician, not a psychologist,

2    and that his expertise as a medical reviewer is for medical issues rather than

3    psychological issues.  Tr. 25-26.  As the ALJ acknowledged, under general

4    principles of law, Dr. Burkett is qualified to give a medical opinion as to Plaintiff's

5    mental state as it relates to her physical disability.  *Sprague v. Bowen*, 812 F.2d

6    1226, 1232 (9th Cir. 1987).  However, the ALJ observed that in his 12 years as a

7    DDS reviewer in Utah, Dr. Burkett would not have reviewed mental health issues,

8    which is experience he cited as giving him authority and expertise to analyze the

9    mental health evidence in this record.  Tr. 25-26.

10    Furthermore, the ALJ noted that Dr. Burkett cited a Social Security Program

11    Operations Manual System (POMS) section which does not exist, which

12    diminished his purported expertise.  Tr. 26.  Indeed, Dr. Burkett cited his 12 years

13    of experience as a medical consultant for Utah DDS and adjudication of over

14    65,000 cases, and asserted that, "I know the sequential evaluation, the listing and

15    POMS."  Tr. 715.  According to Dr. Burkett, "POMS 22000.020 says any benefit

16    of the doubt to be given to the claimant."  Tr. 716.  However, POMS 22000.020

17

18    _____

     of the problems" but, according to Dr. Burkett, did not "factor in" treating sources

19    who should have been given more weight than a one-time evaluator.  Tr. 25, 716.

20    The ALJ observed that Dr. Burkett is also a one-time evaluator who did not even

21    examine Plaintiff.  Tr. 25.

does not exist.  *See* Social Security Administration, *Program Operations Manual Systems*, https://secure.ssa.gov/apps10/poms.nsf/Home?readform (last visited May 25, 2020).  The ALJ reasonably gave less weight to Dr. Burkett's opinion based on this reference.

Third, the ALJ found that the record consistently reflected relatively normal physical, mental, and neurological examinations.  Tr. 26.  The ALJ also noted that Plaintiff and her primary care provider reported improvement of her mental health symptoms.  Tr. 26.  The ALJ observed there were minimal findings on examination during hospital visits and only mild findings in diagnostic imaging.  Tr. 26.  As discussed *supra*, the ALJ's interpretation of the record is reasonable and these findings are supported by substantial evidence.  This is a specific, legitimate reason for giving less weight to Dr. Burkett's opinion.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.  Accordingly,

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

1    **IT IS SO ORDERED**.  The District Court Clerk is directed to enter this

2    Order and provide copies to counsel.  Judgment shall be entered for Defendant and

3    the file shall be **CLOSED**.

4    **DATED** May 27, 2020.

5    <u>    *s/ Rosanna Malouf Peterson*    </u>
     ROSANNA MALOUF PETERSON

6    United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 28